BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

LAW OFFICE OF CARREE K. NAHAMA
CARREE K. NAHAMA (270452)
530 B Street, Suite 1550
San Diego, CA 92101-4493
Tel: 619/230-1434
619/230-1181 (fax)
cnahama@cknlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH TARKETT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> USAA GENERAL INDEMNITY COMPANY, <br><br> Defendant. | Case No. **'23CV1724 H    BLM** <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

Plaintiff Joseph Tarkett ("Plaintiff") brings this class action complaint against Defendant USAA General Indemnity Company ("USAA" or "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    This is a class action arising out of USAA's deceptive and unfair practice of failing to pay its insureds the amount owed after it declares its insureds' leased vehicles a total loss.

2.    Under USAA's standard vehicle insurance contract, USAA pays out the Actual Cash Value ("ACV") of an insured vehicle if it is deemed a total loss after a collision. Historically, with leased vehicles, the ACV was less than the amount owed on the vehicle by a lessee under the lease agreement. That is because the value of a new leased vehicle greatly declined the minute it was driven off the car lot.

3.    However, in recent years, the automotive industry has experienced a trend: used car prices have not only remained stable, but in some cases, steadily risen. As used car prices have risen, the residual value of leased vehicles – the estimated value of the car at the end of the lease term – has also increased. In many cases, this has resulted in a leased vehicle's value being higher than the amount owed under the lease at the time of a total loss collision. That means that when a total loss accident or collision occurs, not only is the remaining lease balance amount covered by insurance, but a surplus amount remains. The surplus is related to the increased cost to the insured to obtain a replacement vehicle given the rise in used vehicle prices. Consequently, when the insurance payout is more than what insureds owe to their leasing companies, the resulting surplus should rightfully be paid to the insureds as owners and payees of the insurance policy. That way the insureds can pay off what remains under the leasing agreement and use the remaining money to obtain a replacement vehicle.

BLOOD HURST & O' REARDON, LLP

00201792

4.      In breach of its standardized insurance policy and in violation of the laws alleged herein, USAA does not provide the equity surplus amount to its insureds. Instead, USAA unlawfully sends the entire insurance payout, including the equity surplus amount, to the insureds' leasing companies even though the leasing companies have no right to the surplus under the insurance contract, or otherwise.

5.      In exchange for premiums paid by Plaintiff and its thousands of other insureds, USAA provided standardized auto insurance coverage, promising to pay them the ACV of their insured vehicles minus the applicable deductible in the event of a total loss. Plaintiff and the other Class Members each experienced total loss events involving their leased, insured vehicles. USAA accepted coverage, declared the covered vehicles to be total losses, and calculated the ACV and applicable deductibles for the vehicles. Based on USAA's calculations, the amount USAA owed its insureds exceeded the amount of money its insureds owed their auto lenders. USAA knew or should have known this fact, including because insurers typically: (1) require copies of the lease agreement during the application process to underwrite and assess the risks associated with the leased vehicle; and (2) receive the outstanding lease balance from the leasing company when handling a total loss claim involving a leased vehicle. However, USAA did not pay any of the loss payout amount, including any of the equity surplus, to Plaintiff and the other Class Members. Instead, in breach of the policy and in violation of the laws alleged herein, USAA sent the entire loss payout amounts it owed under the insureds' policies to third-party lenders. To date, USAA refuses to send any of that money to Plaintiff and the other Class Members.

6.      As a result, Plaintiff now brings this action individually and on behalf of all similarly situated insured persons and entities against USAA for its failure to honor its duties and obligations under the Policy. Plaintiff and the Class allege claims for breach of contract, violations of California's Unfair Competition Law, conversion, and unjust enrichment. Plaintiff and Class Members are entitled to damages and restitution arising from USAA's failure to pay them any portion of the loss payout,

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

00201792

and also request declaratory and injunctive relief regarding the parties' obligations under the Policy.

### JURISDICTION AND VENUE

7.     The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California. Defendant has marketed, promoted, distributed, and sold the Policy at issue in California, rendering exercise of jurisdiction by California courts permissible.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district. Venue also is proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this district.

### PARTIES

#### *Plaintiff*

10.     Plaintiff Joseph Tarkett is a citizen of the State of California, and, at all times relevant to this action, resided in Bonita, California. Plaintiff, a combat-wounded Marine Veteran, purchased an automobile insurance policy from USAA that provides coverage for, *inter alia*, physical damage including comprehensive loss and collision loss, to a 2021 BMW X5 that he leased. The policy was effective at the time he leased the vehicle in 2021, and was most recently renewed for that vehicle for a policy period of October 27, 2022 to April 27, 2023. Plaintiff timely and in full paid the premiums associated with his insurance policy at issue.

11.     On January 26, 2023, which was during the policy period, Plaintiff's insured BMW X5 was involved in a traffic accident in San Diego, California, and totaled as a result. USAA accepted coverage for this event, declared the vehicle to be

3

00201792

a total loss, and determined that it owed $59,834.90 – the market value of the car – under Plaintiff's policy. At the time of the collision and total loss event, Plaintiff owed $37,595.06 to BMW under the vehicle lease. Accordingly, after subtracting the amount Plaintiff owed under his lease from the amount USAA owed under the policy and the $1,000 Plaintiff had already paid for the deductible, an equity surplus of $21,239.84 remained. However, USAA paid to BMW both the lease balance owed by Plaintiff and the equity surplus that was owed to Plaintiff for a total of $58,834.90. Other than reimbursing him $1,000 for his deductible that was waived under the terms of the policy, USAA refused to pay directly to Plaintiff any portion of the amount due under his insurance policy. USAA's conduct is in violation of the laws alleged herein and Plaintiff has suffered injury in fact and has lost money as a result of USAA's conduct.

### Defendant USAA General Indemnity Company

12.     United Services Automobile Association ("United Services") is a reciprocal interinsurance exchange. United Services' annual statement identifies "United States Automobile Insurance and its property and casualty affiliates" collectively as "USAA." United Services writes auto insurance through four different insurers that operate under common management and control. These four commonly managed and controlled insurers are the parent company, United Services Automobile Association ("United Services"); USAA Casualty Insurance Company; Garrison Property and Casualty Insurance Company; and the Defendant here, USAA General Indemnity Company. United Services owns 100% of the common stock of Defendant USAA General Indemnity Company.

13.     Each of the four USAA companies insures a different segment of the military or military family members. Upon information and belief, each of the four USAA companies have issued the same Policy that is at issue in this action. According to their underwriting guidelines, United Services insures commissioned officers as well as senior noncommissioned officers in pay grades E-7 or higher. USAA Casualty

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00201792

Insurance Company insures family members of those who qualify for United Services. Garrison Property and Casualty Insurance Company insures military family members who do not qualify for USAA Casualty Insurance Company. And USAA General Indemnity Company insures enlisted people in pay grades E-1 through E-6.

14.    Defendant USAA General Indemnity Company, a direct subsidiary of United Services, is organized under the laws of the State of Texas. Its principal place of business is at 9800 Fredericksburg Road, San Antonio, TX 78288. USAA General Indemnity Company advertises, markets, distributes, sells and/or issues auto insurance to tens of thousands of consumers in California and throughout the United States, including the Plaintiff.

## FACTUAL ALLEGATIONS

### I.    Leased Vehicles and Auto Insurance

15.    In recent years, due to an increase in inflation and issues in the manufacturing and delivery of new vehicles, there has been a notable surge in demand for used vehicles. This surge, in turn, has led to a rise in the market value of used vehicles.

16.    Given this inflationary phenomenon, the actual market value of leased vehicles is now often higher than the residual value of a leased vehicle – the estimated value of the car upon termination of the vehicle lease agreement.

17.    When a leased vehicle is involved in an accident and is declared a total loss by the insurance company, the market value assessed by the insurance company is often higher than the remaining balance of the lease.

18.    The lessees, here Plaintiff and the Class Members, were required to and did purchase and maintain insurance on their leased vehicles as part of their lease agreements. Leasing companies require insurance so that any insurance payment will be applied towards what remains on a lease at the time of payout. As a result, their right to any insurance payout is limited to their rights under the leasing agreement. To

BLOOD HURST & O' REARDON, LLP

00201792

the extent the lease has been paid off when the vehicle is deemed a total loss, the leasing company has no right to any insurance payout.

19.     This is similar to financed purchased vehicles where the financing company requires a financed vehicle be insured while money is still owed on the vehicle. This ensures that any insurance payout can be applied towards what is owed under the purchase financing agreement. To the extent no money is owed under the financing agreement at the time the vehicle is deemed a total loss, the financing company has no right to any insurance payout.

20.     Therefore, just as with purchased vehicles, lessees, as the insureds paying for insurance, are entitled to the difference between the insurance payout and the outstanding balance of the lease.

21.     USAA's policy and practice with leased vehicles is contrary to that of its competitors in the auto insurance industry. Unlike USAA, when the auto insurance loss payout is more than what the named insured owes to the leasing company, USAA's competitors pay the equity surplus directly to the named insured.

## II.     The USAA Insurance Policy

22.     USAA sold Plaintiff and members of the Class standardized automobile insurance policies (the "Policy"). *See* Exhibit A (the Policy).

23.     Plaintiff and members of the Class paid premiums to USAA in exchange for the coverages and benefits of the Policy.

24.     Pursuant to the "AGREEMENT" section of the Policy, USAA agreed that "In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations." Exhibit A (USAA Policy) at Page 3.

25.     At issue in this case is USAA's payment for total loss owed under the "comprehensive loss" and "collision loss" provisions within the "Physical Damage Coverage" part of the Policy.

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

00201792

26. According to the Declarations of the Policy, USAA agreed to provide "comprehensive loss" and "collision loss" coverages with limits of liability being the insured vehicle's "actual cash value" ("ACV") less the insured's deductible amount. *See* Exhibit B (Policy Declarations) at Page 6.[1]

27. The purpose of the total loss payment being the Actual Cash Value of the car is to provide a fair and reasonable compensation to the insured party in the event their vehicle is declared a total loss after an accident or other covered event. The ACV represents the market value of the vehicle at the time of the loss, taking into account factors such as the car's age, mileage, condition, and depreciation. As defined by USAA in the Policy, ACV "means the amount that it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." *See* Exhibit A (USAA Policy) at Page 17, Part D, Definition A.

28. Basing the total loss payout on the ACV serves several purposes. Principal among these purposes is fair compensation. That is, the aim of ACV is to provide a payment that reflects the true value of the vehicle at the time of the loss, allowing the insured party to be fairly compensated for their loss. This allows the insured party to potentially purchase a replacement vehicle that is similar to what they had before the accident.

29. Despite agreeing to provide comprehensive and collision loss coverages, USAA failed to provide coverage to Plaintiff and the Class under those provisions of the Policy as further set forth below.

30. As stated in the Policy, USAA agreed to pay insureds for "Comprehensive Coverage (excluding collision)":

---

[1]     However, as explained below, in the Policy section titled "Waiver of Collision Deductible" USAA stated that any deductible would be waived under specified collision loss circumstances.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00201792

Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

*See* Exhibit A (USAA Policy) at Page 18, Section A.1 of "Insuring Agreement" section of the Physical Damage Coverage.[2]

31.    As stated in the Policy, USAA also agreed to pay insureds for "Collision Coverage":

**We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and your personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

*See* Exhibit A (USAA Policy) at Page 18, Section B of "Insuring Agreement" section of the Physical Damage Coverage.

32.    As stated in the Policy, USAA's "limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle." *See* Exhibit A (USAA Policy) at Page 19, Section A.

33.    As defined in the Policy, "**Actual cash value**" means:

[T]he amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

*See* Exhibit A (USAA Policy) at Page 17, Section A.

34.    "**Loss**" is defined as "direct and accidental damage to the operational safety, function, or appearance of…**your covered auto**…**Loss** includes a total loss…" *Id.* at Section D.

---

[2]    Bolded words or phrases quoted from the Policy that appear in this Complaint are also bolded in the Policy to indicate that they are defined words or phrases.

BLOOD HURST & O' REARDON, LLP

35.     The Policy further states that "**We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**." *Id.* at Page 19, Section A.2.[3]

36.     USAA contractually agreed that under the Policy, Plaintiff was the "owner" of the insured vehicle. *See* Exhibit A (USAA Policy) at Page 26 (section titled "OWNERSHIP").

37.     USAA also defined "You" and "your" to mean Plaintiff and his spouse only:

> "**You**" and "**your**" refer to the "named insured" shown on the Declarations and spouse or registered domestic partner if a resident of the same household.

*See* Exhibit A (USAA Policy) at Page 3, Section A.

38.     Under the Policy's "Payment of Loss" section, USAA promised to "pay for **loss** in money, or **repair** or replace the damaged or stolen property." *See* Exhibit A (USAA Policy) at Page 20 (section titled "PAYMENT OF LOSS"). In the same section, the Policy specifies who USAA may settle the insured loss claim with: "**you** or with the owner of the property." *Id.* As stated above, both "you" and "the owner of the property" as defined in the Policy refer to Plaintiff. Accordingly, USAA agreed to settle the total loss insurance claim with Plaintiff.

39.     Under the next section of the Policy, titled "Loss Payable Clause," USAA promised that "**Loss** or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations." *See* Exhibit A (USAA Policy) at Page 20 (section titled "LOSS PAYABLE CLAUSE"). The Declarations referenced in the "Loss Payable Clause" of the Policy define Plaintiff as both the named insured and the loss payee. Thus, USAA promised and

B<small>LOOD</small> H<small>URST</small> & O' R<small>EARDON</small>, LLP

---

[3]     The Policy defines "We," "us," and "our" as "the Company providing this insurance" – here, USAA-GIC. *See* Exhibit A (USAA Policy) at Page 3, Section B.

was obligated under the Policy to send the loss payout to "You," "the owner of the property," "the named insured," or "loss payee" – all of which were defined to mean Plaintiff. In breach of the Policy, USAA failed to meet that obligation by not issuing any of the loss payout, including the equity surplus, to Plaintiff.

40.    USAA recognized that the only interest the leasing companies have in the insurance is as lessors. For example, the Declarations for Plaintiff's policy refers to BMW Financial Services as "additional interest – lessor." Exhibit B at Page 6.

41.    Contrary to the plain terms of the Policy and in violation of the laws alleged, USAA refuses to pay the loss payout amount, including the equity surplus to Plaintiff and other Class Members. Instead, USAA wrongfully diverts and has paid the full contractual loss payout amount to third-party lenders, regardless of the lenders' actual interest in the insurance payment, and not to its insureds, Plaintiff and other Class Members who were entitled to some or all of the ACV-based payout amount.

42.    Plaintiff seeks, on his own behalf and on behalf of all other similarly situated individuals, damages, restitution, and declaratory and injunctive relief to define the parties' rights and obligations and to stop USAA's ongoing misconduct.

## CLASS DEFINITION AND ALLEGATIONS

43.    Plaintiff, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), brings this action on behalf of the following classes (collectively, the "Class"):

> All USAA insured persons and entities with comprehensive loss or collision loss coverage for physical damage to their covered leased vehicle under an insurance policy issued by USAA General Indemnity Company, who suffered a total loss of their vehicle, resulting in an equity surplus based on USAA's ACV payout calculation, and for which USAA General Indemnity Company failed to pay them for all or a portion of the covered loss.

44.    Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from

BLOOD HURST & O' REARDON, LLP

00201792

the Class, the judge to whom this case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

45.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of the proposed Class.

47.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

(a)     whether Plaintiff and other Class Members suffered a covered loss under the common policy issued to the Class;

(b)     whether Defendant was required to pay Plaintiff and other Class Members directly for the entire amount of the total loss;

(c)     whether Defendant was required to pay Plaintiff and other Class Members directly for the equity surplus amount of the total loss;

(d)     whether Defendant breached its contract of insurance by sending payment for loss to the named insured's lending companies and not the named insured's themselves;

(e)     whether Defendant's conduct constitutes violations of the laws asserted herein;

(f)     whether Defendant's conduct constitutes a violation of Cal. Bus. & Prof. Code § 17200, et seq.;

(g)     whether Defendant's conduct violates public policy;

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

(h)  whether Plaintiff and other Class Members have been injured and the proper measure of their losses as a result of those injuries;

(i)  whether Plaintiff and other Class Members are entitled to an award of punitive damages;

(j)  whether Plaintiff and other Class Members are entitled to injunctive, declaratory, or other equitable relief; and

(k)  whether Plaintiff and other Class Members are entitled to an award of reasonable attorneys' fees, interest, and costs.

48.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through the uniform prohibited conduct described above.

49.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and his counsel.

50.  **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

51.  **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden

BLOOD HURST & O' REARDON, LLP

00201792

and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

## COUNT I

### Breach of Contract

### And the Implied Covenant of Good Faith and Fair Dealing

52. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

53. Plaintiff brings this claim individually and on behalf of the Class.

54. The Policy owned by Plaintiff and other Class Members is an insurance contract under which Defendant was paid premiums in exchange for its promises to pay Plaintiff's and other Class Members' losses for claims covered by the Policy, and in the amount and manner set forth in the Policy.

55. The Policy between Plaintiff and other Class Members on the one hand, and Defendant on the other, includes the adhesionary comprehensive loss and collision loss coverage provisions discussed in this Complaint. *See* Exs. A and B.

56. In the Policy, Defendant promised to pay for direct and accidental damage to the operational safety, function, or appearance of, or theft of the damaged vehicles, which under the circumstances at issue, it determined to be covered, total loss events for which its payment obligation was the ACV of the insured vehicle less any applicable deductible. *See* Exhibit A (USAA Policy) at Page 20 (section titled "PAYMENT OF LOSS").

BLOOD HURST & O' REARDON, LLP

57.     The Policy specified that Defendant would settle the claim with the owner of the vehicle, which it defined to be the named insureds, and that any total loss payout under the Policy would be paid to the named insureds. *Id.* at Page 20 (sections titled "PAYMENT OF LOSS" and "LOSS PAYABLE CLAUSE"). But in breach of the insurance agreement, Defendant did not settle the total loss claim with Plaintiff and other Class Members or issue the loss payout amount to Plaintiff and other Class Members – the named insureds.

58.     Additionally, every contract contains an implied duty of good faith and fair dealing. Defendant entered into and is bound by the Policy with Plaintiff and other Class Members: valid and enforceable contracts that contain an implied duty of good faith and fair dealing.

59.     Defendant promised that in the event of a total loss incident involving the vehicle, it would pay to Plaintiff and other Class Members the ACV of their insured vehicles minus any applicable deductible. *See* Exhibit A (Policy) at Pages 17-18. The contractual payout amounts pursuant to the Policy exceeded the amounts that Plaintiff and other Class Members owed their leasing companies. Under the circumstances, it was unconscionable and in breach of the implied covenant for Defendant to pay the entire payout amount to its insureds' leasing companies.

60.     If the total loss payment is more than what the lessee owes to the leasing company, the balance is the sole property of the lessee and should be paid to the lessee. It is unreasonable and unfair for Defendant to make third-party leasing companies the beneficiaries of money that goes beyond the leasing companies' interest in the insurance, which is the amount of money owed by Class Members to those companies under their respective lease agreements. There is no reasonable contractual basis or expectation for Defendant to believe that it is appropriate to provide third-party leasing companies such a financial windfall. This is especially true because the unintended financial gain for these companies results in a loss for Defendant's named insureds, the Class Members who are parties to the Policy. In exchange for substantial

BLOOD HURST & O' REARDON, LLP

premium payments, Defendant contracted with Class Members to provide them with the ACV of their vehicles, which in the event of a total loss, represents a sum of money equivalent to "the amount it would cost, at the time of loss, to purchase a comparable vehicle." *See* Exhibit A (Policy) at page 17, Section A (definition of "Actual Cash Value").

61.   For several reasons, the purposes of the Policy and providing the ACV ("the amount it would cost, at the time of loss, to purchase a comparable vehicle") for total loss in the case of collision and other accidents further supports the fact that Defendant should send the equity surplus payout amount to the named insureds who paid for the Policy rather than to the third-party companies that financed the vehicles:

(a)   Ownership rights: The insured party is the one who purchased the Policy and has been paying the premiums. They are the named insureds in the Policy and hold the rights to the coverage benefits. Sending the equity surplus amount to the insured ensures that they receive the fair compensation they are entitled to according to the terms of their Policy.

(b)   Fulfillment of financial obligations: When a total loss occurs, the primary financial obligation of the insured party is to pay off the outstanding balance owed to the company that financed the vehicle. Once that obligation is met, the insured party should be entitled to any surplus from the insurance payout, as it represents the remaining value of their asset.

(c)   Incentive for responsible insurance purchase: By sending the surplus amount to the insured, insurance companies encourage policyholders to purchase adequate coverage for their vehicles. If the surplus were sent to the financing company instead, policyholders may not see the full benefit of their insurance coverage and may be less inclined to maintain appropriate coverage levels.

(d)   Fair market value compensation: The purpose of insurance is to put the insured party in a similar financial position they were in before the loss occurred. By providing the insured with the surplus amount, they can replace their

totaled vehicle with one of similar value, thus restoring their pre-loss financial situation.

62.    Insurance contracts are meant to protect insureds' reasonable expectation of coverage where the insurer-drafter controls the language of the policy. It is unfair and inequitable under the circumstances for the leasing company to receive the equity surplus amount from Defendant where the Policy is meant to protect Plaintiff's and other Class Members' – the named insureds – expectation of coverage and recovery after a total loss event occurs. The leasing company's primary concern is recovering the outstanding balance on the lease. Any equity surplus amount should belong to the insured party who has borne the costs of the insurance premiums and should receive the benefits of the coverage. Further, the insured party has been paying insurance premiums to secure coverage for their vehicle. If the leasing company receives the equity surplus amount, the insured party would bear the financial burden of the insurance premiums without receiving the full benefits of their coverage.

63.    By paying the equity surplus to the leasing companies, Defendant unjustly enriched the leasing companies at the expense of the Plaintiff and other Class Members. This action deprived the insured parties of the benefits they were entitled to under the terms of the Policy and hindered their ability to replace their vehicles or otherwise use the equity surplus amount rightfully owed to them.

64.    Defendant's decision to pay the entire loss payout to the leasing companies instead of Plaintiff and other Class Members does not have a reasonable contractual basis or justification. The insured parties entered into contracts with Defendant to receive the ACV in the event of a total loss, and Defendant's failure to pay the equity surplus to the insured parties amounts to a breach of the implied covenant of good faith and fair dealing.

65.    Plaintiff and other Class Members paid money to Defendant for insurance premiums to secure coverage for their leased vehicles with the

understanding that in the event of a total loss, Defendant would issue a total loss payout to Plaintiff and other Class Members in the amount determined by the Policy.

66.    Plaintiff and other Class Members have suffered losses and incurred expenses as a result of Defendant's failure to issue the loss payout to them – the named insureds – as required by the Policy.

67.    Plaintiff and the other Class Members have complied with all applicable provisions of the Policy, including payment of premiums.

68.    Defendant, without justification, breached the Policy and the implied duty of good faith and fair dealing by, among other things, collecting insurance premiums from Plaintiff and other Class Members to insure their leased vehicles under the Policy and, after Defendant has declared those vehicles a total loss, failing to pay Plaintiff and other Class Members the entire loss payout, including the vehicle's ACV and any equity surplus.

69.    As a direct and proximate result of Defendant's breach of the Policy and its duty of good faith and fair dealing, as alleged herein, Plaintiff and other Class Members have suffered actual and substantial damages for which Defendant is liable.

## COUNT II

### Violation of the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code § 17200, *et seq.*

70.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

71.    Plaintiff brings this claim individually and on behalf of members of the Class in California.

72.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

73.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.

74.     Unlawful Conduct: In the course of conducting business, as a result of engaging in the conduct alleged in this complaint, including failing to pay its insureds any portion of the loss payoff amounts at issue, USAA has violated Section 17200's prohibition against engaging in unlawful acts and practices by virtue of its conduct, which violates California Civil Code sections 1572, 1573, 1709, and 1711, California Insurance Code sections 790.02 and 790.03, and constitutes a breach of contract, breach of the implied covenant of good faith and fair dealing, breach of its fiduciary duty to act in the best interest of its insureds including its duty to pay valid claims promptly and fairly, conversion, unjust enrichment, and insurance bad faith.

75.     Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

76.     Unfair Conduct: In the course of conducting business, Defendant violated the UCL's proscription against "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts by promising that USAA will issue a total loss payout to the named insured pursuant to the Policy and failing to do so.

77.     There is no societal benefit from Defendant's misrepresentations and omissions, which include promising to but failing to provide loss payouts in an amount of an insured vehicle's ACV in breach of the Policy to the named insureds. There is only harm from Defendant's conduct. While Plaintiff and other Class Members were harmed by paying premiums and failing to receive the benefits promised under the Policy, Defendant was unjustly enriched by its acts, misrepresentations and omissions of material fact concerning the benefits it would confer to Plaintiff and other Class Members under the Policy. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are

BLOOD HURST & O' REARDON, LLP

00201792

substantially injurious to consumers as the gravity of Defendant's conduct outweighs any alleged benefits attributable thereto.

78.     Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. Defendant's conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq*.

79.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

80.     Fraudulent Conduct: In the course of conducting business, Defendant has violated the UCL's proscriptions against "fraudulent" business acts or practices by, among other things, making false and misleading representations and omissions of material fact about the benefits the Policy would confer on Plaintiff and other Class Members in the event their insured vehicles were declared a total loss. Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

81.     USAA's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff and Class Members have suffered injury in fact and have lost money as a result of USAA's unlawful, unfair, and fraudulent conduct.

82.     As a result of its unlawful, unfair, and fraudulent business practices, Defendant was unjustly enriched by receiving insurance premium payments from Plaintiff and other Class Members in return for providing Plaintiff and other Class Members with the Policy that does not confer the advertised and contracted-for benefits.

BLOOD HURST & O' REARDON, LLP

00201792

83.     Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

84.     Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendant of all money obtained from Plaintiff and other Class Members collected as a result of Defendant's unfair competition, and for an order and injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, and awarding all other relief this Court deems appropriate.

### COUNT III

### Breach of Fiduciary Duty

85.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the Class.

87.     Defendant owed a fiduciary duty to Plaintiff and the Class Members as their insurer under the auto insurance Policy.

88.     The Policy required Defendant to pay to Plaintiff and other Class Members the ACV of these insureds' vehicles (less any applicable deductible) in the event of a total loss.

89.     Despite this obligation, Defendant breached its fiduciary duty by paying the entire amount of the loss payout to the insureds' vehicle leasing companies, who were not the named insureds under the Policy, instead of paying it to the named insureds – Plaintiff and the Class Members.

90.     By paying the entire amount of the loss payout to the insureds' vehicle leasing companies, Defendant failed to act in the best interests of its insureds, who were entitled to be sent the loss payment, in whole or in part, under the terms of the Policy.

91.     Defendant's actions caused Plaintiff and other Class Members to suffer damages, including financial harm and inconvenience, because they were deprived of the funds they were entitled to receive under the Policy.

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

92.     Defendant's actions were intentional, reckless, and/or in bad faith, and constituted a breach of its fiduciary duty to Plaintiff and other Class Members.

## COUNT IV

## Conversion

93.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the Class.

95.     Plaintiff and other Class Members had a right to be sent a loss amount equaling the ACV less any applicable deductible of their vehicles under the Policy.

96.     Defendant wrongfully deprived Plaintiff and other Class Members of their right to be sent the ACV less any applicable deductible by paying the entire loss payout to the insureds' vehicle leasing companies, who were not entitled to receive the payment under the terms of the Policy.

97.     Defendant intentionally or recklessly converted Plaintiff's and Class Members' property (i.e., all or part of the ACV less any applicable deductible) by paying it to the insureds' vehicle leasing companies, rather than to Plaintiff and Class Members directly.

98.     The conversion caused Plaintiff and Class Members to suffer damages, including the loss of their property and the value of the ACV payout that they were entitled to receive under the Policy.

99.     Defendant's conduct was done with knowledge of the wrongful taking and with the intent to deprive Plaintiff and Class Members of their property rights in the ACV amount.

100.   Defendant's conduct was done without justification or excuse and constituted a wrongful and intentional interference with Plaintiff's and Class Members' rights to their property.

## COUNT V

## For Declaratory Relief

101.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

BLOOD HURST & O' REARDON, LLP

00201792

21

102.   Plaintiff brings this claim individually and on behalf of the Class.

103.   Plaintiff's and Class Members' insurance coverage for their leased vehicles, including their ability to recover the promised loss payout amounts was the express purpose of the Policy.

104.   Plaintiff's and Class Members' benefit of receiving insurance coverage for their vehicles was the mutual purpose in the Policy, as Plaintiff and other Class Members on the one hand and Defendant on the other understood at the time of contracting, and but for their right to receive coverage and ability to recover the promised loss payout amounts, Plaintiff and other Class Members would not have purchased the Policy. When Plaintiff's and other Class Members' vehicles were declared a total loss and Defendant failed to pay them all or a portion of the loss payout amount, Defendant breached the Policy due to no fault of Plaintiff and other Class Members, and Plaintiff and other Class Members were deprived of the consideration they were to receive in exchange for paying USAA for the coverage and represented benefits of the Policy.

105.   Legal remedies available to Plaintiff and other Class Members are inadequate to redress Defendant's continuing unlawful practices at issue.

106.   Declaratory relief is proper regarding the subject matter of this action because an actual controversy has arisen and now exists regarding Plaintiff's rights, and Defendant's obligations, relating to the Plaintiff's and other Class Members' rights to be paid all or a portion of the loss payout amounts under the standardized insurance Policy contracts at issue. This Court has the power to declare the obligations and duties of the parties and to give such other relief as may be necessary.

107.   By virtue of the foregoing, there exists an actual, justiciable controversy between the parties. Plaintiff contends that Defendant's issuing of the full loss payout to his vehicle leasing company instead of him – the named insured – pursuant to the Policy is unlawful. Defendant charged and collected and continues to charge and collect insurance premiums under the Policy despite failing to issue loss payments to

22

CLASS ACTION COMPLAINT

the proper parties after declaring Plaintiff's and other Class Members' vehicles a total loss. Defendant received these insurance premium payments from Plaintiff and other Class Members in exchange for the promise of issuing a loss payout in the event their vehicles were declared a total loss, but Defendant failed to uphold that contracted-for promise by failing to pay Plaintiff and Class Members. Defendant has not refunded the money it received in the form of premium payments, or issued the loss payouts to Plaintiff and Class Members – the named insureds – as required under the Policy.

108.   Accordingly, Plaintiff requests a judicial determination of his rights and duties, and the rights and duties of absent Class Members, and a declaration as to whether USAA's insurance benefit payout practice is illegal or a breach of contract. A declaration from the Court ordering USAA to stop its ongoing, illegal practices is required.

**COUNT V**

**Unjust Enrichment**

109.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

110.   Plaintiff brings this claim individually and on behalf of the Class.

111.   The mutual purpose of the Policy, as understood by Plaintiff and other Class Members on the one hand and Defendant on the other, was that in return for payment of the premium due under the Policy, USAA would provide the coverages promised under the Policy as shown on the Declarations. These coverages for which premium payments were made to USAA by Plaintiff and the other Class Members was for receiving ACV in the event of total loss.

112.   When Plaintiff and other Class Members did not receive a loss payout after Defendant declared their vehicles a total loss despite receiving insurance premium payments from Plaintiff and other Class Members, Defendant violated the Policy due to no fault of Plaintiff and other Class Members. Plaintiff and other Class Members were deprived of the loss payout they – the named insureds – should have received in exchange for the premiums they paid to Defendant under the Policy.

BLOOD HURST & O' REARDON, LLP

00201792

113. Defendant received a benefit from Plaintiff and other Class Members. Namely, Plaintiff and other Class Members paid insurance coverage premiums for their vehicles in exchange for the promise that Defendant would issue to them a loss payout in the event their covered vehicles were declared a total loss. Defendant failed to uphold that contracted-for promise when it did not send them the loss payout, but instead issued the loss payout to third-party vehicle leasing companies.

114. Defendant has thus been unjustly enriched by failing to issue all or some of the loss payout to Plaintiff and other Class Members in violation of the terms of the Policy at the expense of Plaintiff and other Class Members.

115. Defendant's retention of the insurance premium payments is unjust because it violated the terms of the Policy under which Plaintiff and other Class Members made such payments in exchange for the promise to receive coverage and loss payout as stated and reasonably understood in the Policy.

116. Under principles of good conscience, Defendant should not be allowed to retain the insurance premium payments that Plaintiff and other Class Members paid to Defendant in exchange for Defendant's promise to provide them coverage and loss payout as stated and reasonably understood in the Policy.

117. Plaintiff and other Class Members are entitled to full restitution of the sums they paid as insurance premiums and as other consideration to Defendant for the Policy, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

BLOOD HURST & O' REARDON, LLP

00201792

CLASS ACTION COMPLAINT

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and other Class Members as a result of Defendant's unlawful, unfair and fraudulent business practices;

C. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

D. Ordering damages for Plaintiff and the Class;

E. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and other Class Members;

F. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

Ordering such other and further relief as may be just and proper.

Respectfully submitted,

Dated: September 18, 2023

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:      s/ Timothy G. Blood
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

LAW OFFICE OF CARREE K. NAHAMA
CARREE K. NAHAMA (270452)
530 B Street, Suite 1550
San Diego, CA 92101-4493
Tel: 619/230-1434
619/230-1181 (fax)
cnahama@cknlaw.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

00201792