**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH TARKETT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USAA GENERAL INDEMNITY COMPANY, a Texas Corporation,<br><br>Defendant. | Case No.: 3:23-cv-01724-H-BLM<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Doc. No. 15.] |

On December 11, 2024, Defendant USAA General Indemnity Company ("Defendant") filed a motion to dismiss Plaintiff Joseph Tarkett's ("Plaintiff") first amended complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). (Doc. No. 15.) On January 22, 2024, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 18.) On January 29, 2024, Defendant filed a reply. (Doc. No. 19.) On March 28, 2024, the Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 22.) For the reasons below, the Court grants Defendant's motion to dismiss Plaintiff's first amended complaint with leave to amend.

/ / /

/ / /

# BACKGROUND

The following factual background is taken from the allegations in Plaintiff's first amended complaint. Plaintiff leased a vehicle from BMW Financial Services ("BMW"). (Doc. No. 13 ¶ 10, First Amended Complaint ("FAC").) Under the lease agreement, Plaintiff agreed to pay BMW an initial payment of $20,500, plus $548.25 per month for 36 months, for a total of $40,038.75, in exchange for the right to possess and drive the vehicle for three years. (Doc. No 13-3 ¶¶ 2, 3, 8, 10, Lease Agreement.) As required by the lease agreement, Plaintiff purchased an automobile insurance policy from Defendant that provided physical damage and collision coverage for the vehicle. (FAC ¶ 10; Lease Agreement ¶ 20.) The insurance policy was effective at the time Plaintiff leased the vehicle in 2021, and Plaintiff most recently renewed the policy for the period of October 27, 2022, to April 27, 2023. (FAC ¶ 10.)

On January 26, 2023, Plaintiff was involved in a traffic accident in San Diego, California. (Id. ¶ 11.) Defendant accepted coverage for the accident and declared the leased vehicle to be a total loss. (Id.) Defendant then determined that it owed $59,834.90 for the totaled vehicle. (Id.) Plaintiff does not dispute the amount owed by Defendant for the totaled vehicle. (See FAC.) Rather, Plaintiff disputes who was entitled to payment under the insurance policy—Plaintiff or BMW. (Id. ¶ 11.)

Plaintiff alleges that at the time of the traffic accident, Plaintiff still owed $37,595.06 to BMW under the lease agreement. (Id.) Thus, Plaintiff contends that only $37,595.06 should have been paid to BMW, and the remainder should have been paid to Plaintiff. (Id.) Instead, Defendant paid $58,834.90 to BMW, which Defendant contends was demanded by BMW. (Id.; Doc. No. 15-1 at 10.) The remaining $1,000 was paid to Plaintiff directly. (FAC ¶ 11.) Plaintiff alleges that he has suffered an injury in fact and has lost money as a result of Defendant's unlawful, unfair, and fraudulent conduct. (Id. ¶ 11, 89.)

On September 18, 2023, Plaintiff filed a putative class action complaint against Defendant. (Doc. No. 1.) On November 6, 2023, Defendant filed a motion to dismiss Plaintiff's complaint. (Doc. No. 12.) On November 27, 2023, in lieu of filing an opposition

to Defendant's motion to dismiss, Plaintiff filed a first amended complaint, alleging claims for: (1) breach of contract; (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. (Doc. No. 13.) By the present motion, Defendant moves to dismiss Plaintiff's first amended complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). (Doc. No. 15.)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

1   Id. at 679.  Accordingly, dismissal for failure to state a claim is proper where the claim
2   "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
3   Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los
4   Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

5         In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the
6   factual allegations of the complaint as true and construe them in the light most favorable
7   to the plaintiff.'"  Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v.
8   Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)).  But a court need not accept "legal
9   conclusions" as true.  Iqbal, 556 U.S. at 678.  "Further, it is improper for a court to assume
10  the claimant "can prove facts which it has not alleged or that the defendants have violated
11  the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc.
12  v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  In addition, a court may
13  consider documents incorporated into the complaint by reference and items that are proper
14  subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th
15  Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then
16  determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497
17  (9th Cir. 1995).  "A district court should grant leave to amend . . . unless it determines that
18  the pleading could not possibly be cured by the allegation of other facts."  Id.

19       **B.**    **Article III Standing**

20        Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject
21  matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a federal court is to
22  first determine its jurisdiction over the dispute.  See Bates v. United Parcel Serv., Inc., 511
23  F.3d 974, 985 (9th Cir. 2007); Ellis v. J.P. Morgan Chase & Co., 950 F. Supp. 2d 1062,
24  1071 (N.D. Cal. 2013).  A court sustains a facial attack on subject matter jurisdiction if
25  "the allegations contained in the complaint [or on matters which the court can take judicial
26  notice of] are insufficient on their face to invoke federal jurisdiction."  Safe Air for
27  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).
28        Article III limits the jurisdiction of federal courts to "cases" and "controversies,"

which is delineated by the doctrine of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must first have suffered an "injury in fact" which is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." Id. (citations omitted). The "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (internal citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant . . . ." Lujan, 504 U.S. at 560 (citations and alterations omitted). Finally, it must be "likely" that the "injury will be redressed by a favorable decision." Id. (citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Moreover, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 185 (2000)).

## II.    ANALYSIS

Defendant moves pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6) to dismiss Plaintiff's first amended complaint with prejudice. (Doc. No. 15 at 2.) Specifically, Defendant argues that: (1) Defendant did not breach the insurance policy by paying BMW for the totaled vehicle; (2) Plaintiff cannot pursue equitable remedies because he has failed to plead facts establishing that his legal remedies are inadequate; (3) Plaintiff lacks Article III standing to seek injunctive relief; (4) Plaintiff fails to plead any claim for relief under the fraudulent prong of the UCL; and (5) Plaintiff's breach of the implied covenant of good faith and fair dealing and declaratory relief claims are entirely duplicative of Plaintiff's breach of contract claim. (Doc. No. 15-1 at 11–27; Doc. No. 19 at 2–11.)

### A.    Plaintiff's Breach of Contract Claim

In the first amended complaint, Plaintiff alleges a breach of contract claim. (FAC ¶¶ 67–77.) Defendant argues that Plaintiff's claim for breach of contract should be

dismissed because Plaintiff did not have an equity interest in the totaled vehicle under lease agreement and Defendant was required to pay the actual cash value of the vehicle to the entity with the controlling interest in the vehicle, which Defendant argues is BMW. (Doc. No. 15-1 at 11–18; Doc. No. 19 at 2–6.)

Under California law, a claim for breach of contract requires (i) the existence of the contract; (ii) plaintiff's performance of the contract or excuse from non-performance; (iii) defendant's breach of the contract; and (iv) the resulting damage to the plaintiff. D'Arrigo Bros. of California v. United Farmworkers of Am., 224 Cal.App.4th 790, 800 (2014) (citations omitted). A plaintiff must plead "appreciable and actual damage" in relation to their breach of contract claim. Low v. LinkedIn Corp., 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (citing Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000)). "Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury." Id. "In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." Young v. Facebook, Inc., 790 F.Supp.2d 1110, 1117 (N.D. Cal. 2011).

Plaintiff's amended complaint alleges that he "purchased an automobile insurance policy from USAA that provides coverage for, *inter alia*, physical damage including comprehensive loss and collision loss, to a 2021 BMW X5 that he leased." (FAC ¶ 10.) Plaintiff argues that the insurance policy "specified that Defendant would settle the claim with the owner of the vehicle," which Plaintiff argues is "defined to be the named insureds." (Id. ¶ 72.) Plaintiff further argues that "any total loss payout under the Policy would be paid to the named insureds." (Id.) Plaintiff asserts that Defendant breached the insurance policy because Defendant did not settle the total loss claim with Plaintiff or issue the loss payout amount to Plaintiff, the named insured. (Id.) While Plaintiff points to numerous provisions from the insurance policy in his first amended complaint, Plaintiff largely relies on the Payment of Loss provision and the Loss Payable Clause as the relevant provisions that create the obligation Defendant allegedly breached. (Id. ¶¶ 71–72.)

The Payment of Loss provision states:

> We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to you or to the address shown on the Declarations. If we return stolen property, we will pay for any damage resulting from the theft. We may keep all or part of the damaged or stolen property and pay you an agreed or appraised value for it. We cannot be required to assume the ownership of damaged property. We may settle a claim either with you or with the owner of the property.

(Doc. No. 13-1 at 21, Ex. A.) Moreover, the Loss Payable Clause states:

> Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion, or embezzlement of your covered auto. We may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown on the Declarations. We may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that we not send notices, including a notice of cancellation, we will abide by that request. When we pay the loss payee we will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

(Id. at 21–22.)

As seemingly recognized by both parties, the Payment of Loss provision does not govern who should receive the insurance payment—it provides that Defendant may settle a claim with the claimant or the owner of the property. (Id. at 21 ("We may settle a claim either with you or with the owner of the property.").) The Loss Payable Clause, however, is the relevant provision that governs to whom a settlement "will be paid." (Id.) Specifically, the Loss Payable Clause states: "Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations." (Id.)

Plaintiff alleges that "[t]he Declarations referenced in the 'Loss Payable Clause' of the Policy define Plaintiff as both the named insured and the loss payee." (FAC ¶ 39.)

Thus, Plaintiff argues that because BMW is only named as an "additional interest—lessor" and not a "loss payee" on the Declarations, Plaintiff was entitled to the insurance proceeds. (Doc. No. 18 at 14–15.) But contrary to Plaintiff's assertions, the term "loss payee" is not a defined term in the insurance policy and more importantly, the Declarations do not name Plaintiff as the loss payee. (See Ex. A at 4–5; Doc. No. 13-2 at 6–7, Ex. B.) Rather, Plaintiff is only listed as the named insured on the Declarations. (Ex. B at 6–7.) Furthermore, Plaintiff fails to allege any facts in his amended complaint that he has an equity interest in the totaled vehicle and thus, was entitled to the equity surplus of the total loss payout. (See FAC.) Indeed, while Plaintiff's lease agreement with BMW provides for a purchase option, (Lease Agreement ¶ 27), Plaintiff does not allege that he exercised such option. (See FAC.) Just because "Plaintiff had a contract for insurance of a lease vehicle does not lead to the conclusion that he was entitled to the benefit of all proceeds on a vehicle he did not own." Kumar v. Ally Fin. Inc., No. 22-cv-05184-SVW-MRW, 2022 WL 16962283, at *3 (C.D. Cal. Oct. 17, 2022).

Plaintiff has not sufficiently alleged a claim for breach of the insurance policy. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's first cause of action for breach of contract.

### B.   Plaintiff's UCL Claim

Plaintiff also alleges a claim against Defendant for violations of California's UCL. (FAC ¶¶ 78–92.) Defendant argues that Plaintiff's UCL claim should be dismissed because (1) Plaintiff cannot pursue equitable remedies because he has failed to plead facts establishing that his legal remedies are inadequate; (2) Plaintiff lacks standing to pursue injunctive relief under the UCL; (3) Plaintiff cannot seek restitution relating to unpaid policy benefits and premium payments; and (4) Plaintiff has failed to plead any claim for relief under the fraudulent prong of the UCL. (Doc. No. 15-1 at 18–24; Doc. No. 19 at 6–9.) Given that Plaintiff fails to allege inadequacy of legal remedies and lacks standing to pursue injunctive relief, the Court need not address Defendant's remaining arguments.

To bring a claim for a violation of California's UCL, "a plaintiff must show either

1  an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive,
2  untrue or misleading advertising.'" Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033,
3  1043 (9th Cir. 2003) (quoting Cal. Bus. & Prof. Code § 17200). The UCL's coverage is
4  "sweeping," and its standard for wrongful business conduct is "intentionally broad." In re
5  First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006) (citation omitted). An
6  "unlawful" practice under the UCL is a business practice that "is forbidden by law."
7  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).

8        An "unfair" practice is a business practice that "offends an established public policy
9  or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to
10 consumers." Id.; see also Day v. AT&T Corp., 63 Cal. App. 4th 325, 332 (1998) ("An
11 'unfair' practice under section 17200 is one 'whose harm to the victim outweighs it
12 benefits.'" (citation omitted)). "A fraudulent business practice is one that is likely to
13 deceive members of the public." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230,
14 252 (2011) (citation omitted). "The challenged conduct 'is judged by the effect it would
15 have on a reasonable consumer.'" Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1169
16 (9th Cir. 2012). But "[u]nlike common law fraud, a [UCL] violation can be shown even
17 without allegations of actual deception, reasonable reliance and damage." Daugherty v.
18 Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2006). "Absent a duty to disclose,
19 the failure to do so does not support a claim under the fraudulent prong of the UCL."
20 Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1557 (2007).

21       Here, Plaintiff's UCL claim seeks equitable relief in the form of restitution and
22 injunctive relief. (FAC ¶ 92.) "[E]quitable relief is not appropriate where an adequate
23 remedy exists at law." Schroeder v. U.S., 569 F.3d 956, 963 (9th Cir 2009). A plaintiff
24 "must establish that []he lacks an adequate remedy at law before securing equitable
25 restitution for past harm under the UCL." Sonner v. Premier Nutrition Corp., 971 F.3d
26 834, 844 (9th Cir. 2020) (citations omitted). Upon review of Plaintiff's amended
27 complaint, Plaintiff has failed to plead any facts establishing that he lacks an adequate
28 remedy at law. (See FAC.) "[A] party seeking equitable relief must specifically plead the

inadequacy of monetary damages in federal court." Martinez v. Ford Motor Co., No. 22-cv-01082-MMA, 2022 WL 14118926, at *8 (S.D. Cal. Oct. 24, 2022) (citations omitted). Plaintiff failed to do so here.

Plaintiff argues that his claim for equitable relief is pleaded in the alternative and such alternative pleading is permitted under the law. (Doc. No. 18 at 20.) While Plaintiff may plead claims for equitable relief in the alternative at the pleading stage, see Johnson-Jack v. Health-Ade LLC, 587 F. Supp. 3d 957, 976 (N.D. Cal. 2022), "[P]laintiff must, at a minimum, plead that []he lacks adequate remedies at law if []he seeks equitable relief." Guthrie v. Transamerica Life Ins. Co., 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (emphasis removed) (citations omitted); see also Martinez, 2022 WL 14118926, at *8. And again, Plaintiff's amended complaint contains no allegations establishing that Plaintiff's legal remedies are inadequate. (See FAC.) As such, Plaintiff has failed to state a claim for equitable relief and his UCL claim must be dismissed on this ground. See, e.g., Sonner, 971 F.3d at 844; Freund v. HP, Inc., No. 22-cv-03794-BLF, 2023 WL 187506, at *6 (N.D. Cal. Jan. 13, 2023) (granting motion to dismiss claims for equitable relief because the plaintiffs failed to plead that they lack an adequate remedy at law); Clark v. Am. Honda Motor Co., No. 20-cv-03147-AB-MRWx, 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) ("Plaintiffs have not pointed to any allegation in the Complaint pleading that they lack an adequate remedy at law.").

Defendant also argues that Plaintiff lacks standing to pursue injunctive relief under the UCL. (Doc. No. 15-1 at 23–24; Doc. No. 19 at 9–10.) The Court agrees. Prospective injunctive relief under the UCL requires a plaintiff to show a "a real or immediate threat of an irreparable injury." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004) (quoting Clark v. City of Lakewood, 259 F.3d 996, 1007 (9th Cir.2001)) (emphasis removed). "In other words, the 'threatened injury must be certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" Davidson, 889 F.3d at 967 (quoting Clapper, 568 U.S. at 409) (emphasis removed). Upon review of the amended complaint, Plaintiff fails to plead any facts showing an immediate

10

3:23-cv-01724-H-BLM

threat of a future injury that is certainly impending. (See FAC.) Plaintiff's future harm is thus "conjectural or hypothetical" and not "actual and imminent." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). As such, Plaintiff lacks standing to pursue his claim for injunctive relief.

In sum, Plaintiff has failed to state a claim for equitable relief and lacks standing to pursue injunctive relief under the UCL. As a result, the Court grants Defendant's motion to dismiss Plaintiff's second cause of action for violations of California's UCL.[1]

### C. Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Next, Plaintiff asserts a breach of the implied covenant of good faith and fair dealing claim. (FAC ¶¶ 93–106.) Defendant argues that Plaintiff's breach of the implied covenant of good faith and fair dealing claim should be dismissed because it is duplicative of Plaintiff's breach of contract claim. (Doc. No. 15-1 at 24–27; Doc. No. 19 at 10–11.) The Court agrees.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683 (1988) (citing Rest. 2d Contracts § 205). The implied covenant of good faith and fair dealing in every contract obligates "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Comunale v. Traders & Gen. Ins. Co., 50 Cal. 2d 654, 658 (1958); see also Thrifty Payless, Inc. v. The Americana at Brand, LLC, 218 Cal. App. 4th 1230, 1244 (2013) ("The covenant is read into contract and functions 'as a supplement to the express contractual covenants, to prevent a

---

[1] Defendant has not raised the issue of whether Plaintiff's UCL claim satisfies the heighted pleading standard of Federal Rule of Civil Procedure 9(b), and the Court need not address this issue in light of the dismissal on other grounds. If Plaintiff chooses to amend, however, his amended complaint should be consistent with that standard. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to UCL claims that are grounded in fraud); see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103–06 (9th Cir. 2003).

contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" (citation omitted) (emphasis removed)).

To assert a claim for breach of the covenant of good faith and fair dealing, plaintiffs "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgement or negligence but rather by a conscious and deliberate act." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990). Such conduct must "unfairly frustrate[] the agreed common purposes and disappoint[] the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Id. But "[i]f the allegations do not go beyond the statement of a mere contract and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Id.

Plaintiff argues that his good faith and fair dealing claim should not be dismissed because his breach of contract and good faith and fair dealing claims are unique. (Doc. No. 18 at 17.) But Plaintiff does not articulate why his good faith and fair dealing claim is distinct from his breach of contract claim. (See id. at 17–19.) Rather, Plaintiff's theory is that Defendant breached the implied covenant of good faith and fair dealing by "paying the lessor the full insurance proceeds owed under the Policy" because it was Plaintiff who was "entitled to receive benefits under the Policy." (Id. at 18.) As Defendant correctly points out, this is the same factual predicate as Plaintiff's breach of contract claim. (Compare FAC ¶¶ 69–76 with id. ¶¶ 102, 106.) Because the allegations underlying Plaintiff's good faith and fair dealing claim are "identical" to the allegations that form the basis of Plaintiff's breach of contract claim, Plaintiff's good faith and fair dealing claim "must give way to the breach of contract claim." Evanston Ins. Co. v. Harrison, No. 20-cv-01672-WBS-KJN, 2021 WL 260011, at *3 (E.D. Cal. Jan. 26, 2021). As such, Plaintiff's breach

of the implied covenant of good faith and fair dealing claim is duplicative of Plaintiff's breach of contract claim and must be dismissed. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's third cause of action for breach of the implied covenant of good faith and fair dealing.

### D. Plaintiff's Declaratory Relief Claim

Plaintiff also seeks a "judicial determination of his rights and duties, and the rights and duties of absent Class Members, and a declaration as to whether [Defendant's] insurance benefit payout practice is illegal or a breach of contract." (FAC ¶ 113.) Defendant argues that Plaintiff's demand for declaratory relief is entirely duplicative of Plaintiff's breach of contract claim and thus, should be dismissed. (Doc. No. 15-1 at 27; Doc. No. 19 at 11.)

Under the Declaratory Judgment Act, "[a]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Courts deny requests for declaratory relief when it is duplicative of other claims because '[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.'" Glendora Courtyard, LLC v. BBVA Compass Bancshares Inc., No. 16-cv-01189-JLS-KSC, 2017 WL 960431, at *8 (S.D. Cal. Mar. 13, 2017) (quoting Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009)); see also Permpoon v. Wells Fargo Bank Nat. Ass'n, No. 09-cv-01140-H-BLM, 2009 WL 3214321, at *5 (S.D. Cal. Sept. 29, 2009) (holding declaratory relief was "duplicative and unnecessary" where "the declaratory relief Plaintiffs seek is entirely commensurate with the relief sought through their other causes of action"). Here, the declaratory relief Plaintiff seeks is entirely commensurate with the relief sought through his breach of contract claim. Thus, Plaintiff's declaratory relief claim is duplicative and unnecessary. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's fourth cause of action for declaratory relief.

/ / /

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss and dismisses Plaintiff's first amended complaint with leave to amend.  See Doe v. United States, 58 F.3d at 497 ("A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").  Plaintiff may file an amended complaint within **thirty (30) days** from the date of this order to cure the deficiencies in his first amended complaint if he can do so.

**IT IS SO ORDERED.**

DATED: June 10, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT